## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FELIX RODRIGUEZ, | ) | |
| Individually and on behalf of all others similarly situated, | ) | Civil Action Case No.: 1:25-cv-00633 |
| | ) | |
| | ) | Judge: Hon. Charles P. Kocoras |
| Plaintiff, | ) | Magistrate: Hon. Beth W. Jantz |
| | ) | |
| v. | ) | |
| | ) | |
| CRESCO LABS, INC.; CRESCO LABS, LLC; | ) | Circuit Court Case No.: 2024CH10461 |
| CRESCO U.S. CORP.; CRESCO EDIBLES, | ) | |
| LLC; TSC CRESCO, LLC; CRESCO LABS | ) | |
| JOLIET, LLC; CRESCO LABS | ) | |
| KANKAKEE, LLC; CRESCO LABS | ) | |
| LOGAN, LLC; CRESCO LABS NOTES | ) | |
| ISSUER, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, COMPEL ARBITRATION AND STAY PROCEEDINGS AND INCORPORATED MEMORANDUM IN SUPPORT**

Pursuant to Fed. R. Civ. P. 12(b)(3), 12(b)(6) and the Federal Arbitration Act (("FAA") 9 U.S.C. § 4), Defendants Cresco Labs, Inc., Cresco Labs, LLC, Cresco U.S. Corp., Cresco Edibles, LLC, TSC Cresco, LLC, Cresco Labs Joliet, LLC, Cresco Labs Kankakee, LLC, Cresco Labs Logan, LLC, and Cresco Labs Notes Issuer, LLC (collectively, "Cresco" or "Defendants"), by and through their undersigned attorney, respectfully move this Court for an order dismissing this class action or, alternatively, compelling Plaintiff Felix Rodriguez ("Plaintiff") to arbitrate his claims individually against Cresco pursuant to the Parties' Agreement (the "Motion").

Cresco also asks the Court to stay these proceedings pending arbitration.

1

Cresco respectfully submits this Memorandum in support of its Motion.

## I. INTRODUCTION

This case involves the marketing, labeling and sale of certain RSO Products to Plaintiff who, by his own allegations, placed an online pre-order for the allegedly offending products on multiple occasions for his personal and medicinal use. But Plaintiff ignores that he previously created a Sunnyside.shop account and agreed to arbitrate "any dispute" against Cresco "relating in any way to the" Sunnyside.shop Terms of Service or "the relationship between" him and Cresco. This broad language covers Plaintiff's claims against Cresco. Because the Parties agreed to arbitrate these claims, the Court should dismiss this action or, alternatively, compel Plaintiff to arbitrate his claims individually against Cresco consistent with the Parties' Agreement.

## II. BACKGROUND

On December 2, 2024, Plaintiff initiated this action against Cresco alleging, among other things, that Cresco improperly labels its RSO Products and intentionally and recklessly misrepresents that its RSO Products are cannabis concentrates when, according to Plaintiff, they are cannabis infused products ("CIP") (Compl. ¶¶ 13 -14.) Plaintiff purportedly relied on Cresco's representations that these products were compliant and safe when he, as alleged, placed an online pre-order for the allegedly offending products on multiple occasions for his personal and medicinal use. (Compl. ¶¶ 114, 119.) Based on these allegations, Plaintiff asserts a host of claims against Cresco on his own behalf and, purportedly and improperly, on behalf of all people who purchased the challenged products in Illinois and Florida within the applicable limitations period.

### A. Plaintiff Accepted the Sunnyside.shop Terms of Service.

Like any consumer who wishes to shop online at Sunnyside.shop and place an online pre-order for in-store pickup, a Sunnyside.shop account is required. *See* the January 24, 2025 Declaration of Anika Trujillo in Support of Defendants' Motion to Dismiss ("Trujillo Decl.") ¶ 5) attached hereto as **Exhibit A**. During the account registration process, Plaintiff was directed to input certain information to create his account. (Trujillo Decl. ¶ 6.) By inputting his information including an email address (where Cresco sends order confirmations) and phone number (used to verify that the number provided is active), Cresco is able to track orders (what Plaintiff ordered, how much and when) (*Id.*)

Before Plaintiff is able to continue his online shopping experience, during the account registration process, he is required (and did) select the "Next" button which is greyed out intentionally during account setup. (*Id.*) This is because Cresco wants to draw the consumer's attention to its TOS and Privacy Policy hyperlinks. (*Id.*) There is no workaround for this. (*Id.*) Stated differently, a consumer cannot create an online pre-order for in-store pickup on Cresco's web platform without creating a Sunnyside.shop account which requires that he or she also affirmatively check the box stating: "By checking this box and clicking Next, you acknowledge that you have read and agree to the Terms of Service and Privacy Policy." (*Id.*) Once Plaintiff affirmatively selected the box indicating that he read and agreed to the TOS, the "Next" button turned orange, and he was then able to continue his online shopping experience to create an online pre-order for in-store pickup on Sunnyside.shop, as he alleges here. (*Id.*)

Based on the information provided in the Complaint (e.g., that Plaintiff is a medical cannabis purchaser who, on or around August 10, 2023, among various other instances, placed an

3

online pre-order for a Remedi RSO Product for his personal and medicinal use), Cresco's internal business records confirm that Sunnyside.shop accounts using the name Felix Rodriguez were created as early as May 8, 2020 and as late as April 24, 2024. (Trujillo Decl. ¶¶ 20, 22.) This means that Plaintiff first saw and agreed to the TOS as early as May 8, 2020. (*Id*. ¶ 22.) All five accounts were created after the TOS became effective (July 2019) and are associated with an adult-use consumer usage type. (*Id*.)

**B.** **TOS Include a Binding Arbitration Clause and Class Waiver**.

The TOS include a binding arbitration clause and class action waiver. (Trujillo Decl. ¶¶ 10-12.) These provisions state:

> ANY DISPUTE RELATING IN ANY WAY TO THIS TOS OR THE RELATIONSHIP BETWEEN THE PARTIES SHALL BE SUBMITTED TO CONFIDENTIAL ARBITRATION IN COOK COUNTY, ILLINOIS AND YOU AGREE TO SUBMIT YOURSELF TO THE JURISDICTION AND PROCEEDINGS THEREOF. ARBITRATION MEANS THAT A SINGLE ARBITRATOR WILL DECIDE THE CLAIM, AND YOU WILL NOT HAVE THE RIGHT TO SUE IN COURT OR TO HAVE A JUDGE OR JURY DECIDE YOUR CLAIM. YOUR RIGHTS TO PREHEARING EXCHANGE OF INFORMATION AND APPEALS MAY ALSO BE LIMITED IN ARBITRATION. IT IS FURTHER AGREED THAT ANY DISPUTE OVER THE SCOPE OF THIS ARBITRATION PROVISION AND ANY DISPUTE AS TO WHETHER A CLAIM IS ARBITRAL SHALL BE SUBMITTED TO THE ARBITRATOR FOR DECISION. NOTWITHSTANDING THE FOREGOING, TO THE EXTENT YOU HAVE IN ANY MANNER VIOLATED OR THREATENED TO VIOLATE OUR INTELLECTUAL PROPERTY RIGHTS OR OTHERWISE HAVE A CAUSE OF ACTION IN EQUITY, WE MAY SEEK INJUNCTIVE OR OTHER APPROPRIATE RELIEF IN ANY COURT OF COMPETENT JURISDICTION AND YOU CONSENT TO JURISDICTION AND VENUE IN ANY SUCH COURT FOR SUCH PURPOSES. ARBITRATION IN CONNECTION TO THIS TOS SHALL BE CONDUCTED UNDER THE CONSUMER-RELATED DISPUTES SUPPLEMENTARY RULES THEN PREVAILING WITH THE AMERICAN ARBITRATION ASSOCIATION. THE ARBITRATOR'S AWARD SHALL BE BINDING AND MAY BE ENTERED AS A

JUDGMENT IN ANY COURT OF COMPETENT JURISDICTION.

You agree that any arbitration or proceeding shall be limited to the dispute between us and you individually, and (i) no arbitration or proceeding shall be joined with any other; (ii) there is no right or authority for any dispute to be arbitrated or resolved on a class action-basis or to utilize class action procedures; and (iii) there is no right or authority for any dispute to be brought in a purported representative capacity on behalf of the general public or any other persons. YOU AGREE THAT YOU MAY BRING CLAIMS AGAINST US ONLY IN YOUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

(Trujillo Decl. Exs. 1 and 2.) The TOS is the Parties' Agreement and therefore controls this dispute.

### III.   ARGUMENT

#### A.   The Sunnyside.shop TOS Govern the Parties' Relationship.

i.   Illinois Law Governs this Dispute.

Whether the Parties have validly agreed to arbitrate is governed by state-law principles of contract formation. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011). Generally, the law applicable to a contract is that which the parties intended, assuming such an intent. *Hofeld v. Nationwide Life Ins. Co.*, 59 Ill. 2d 522, 529, 322 N.E.2d 454, 458 (1975). When, as here, that intent is expressed, it should be followed. *Id*. The Parties agreed that Illinois law governs their relationship. (Trujillo Decl. Exs. 1, 2.)

ii.   Plaintiff Had Reasonable Notice of the TOS.

Plaintiff entered into his agreement with Cresco when he registered online for a Sunnyside.shop account to, as he alleges, place online pre-orders for in-store pickup on multiple occasions. (Compl. ¶ 114.) As part of his account registration process (which occurred as early as May 2020), Plaintiff affirmatively selected a box indicating that he read and agreed to be bound by the TOS. (Trujillo Decl. ¶ 6, 22.) These types of agreements are considered "signup wrap"

agreements and are enforceable in Illinois.[1]  *Ambrosius v. Chi. Ath. Clubs, LLC*, 2021 IL App (1st) 200893, ¶ 29, 461 Ill. Dec. 85, 96-97, 203 N.E.3d 239, 250-51 is instructive.  There, the court explained:

> Courts have also recognized that some agreements do not "fit neatly into the clickwrap or browsewrap categories." Like the agreement at issue here, some hybrid agreements "notify the user of the existence of the website's terms of use and, instead of providing an 'I agree' button, advise the user that he or she is agreeing to the terms of service when registering or signing up."; *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 386, 398 (E.D.N.Y. 2015) (describing such agreements as "sign-in-wraps"); *Vernon v. Qwest Communs. Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149-50 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013) ("Under this hybrid arrangement, the customer is told that consequences will necessarily flow from his assenting click and also is placed on notice of how or where to obtain a full understanding of those consequences.").

*Ambrosius v. Chi. Ath. Clubs, LLC*, 2021 IL App (1st) 200893, ¶ 29.  This is such a case.

Here, a hyperlink to the TOS is shown during initial account registration, at the bottom of each landing page during a consumer's online shopping experience and on a consumer's email confirmation for his or her order for in-store pickup if selected.  (Trujillo Decl. ¶¶ 6, 10, 17, 22.) Here, Plaintiff was "informed that, by signing up, [he] was agreeing to those terms of service, which appeared via hyperlink." *Ambrosius*, at ¶ 31; *see aslo Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) ("[C]licking [a] hyperlinked phrase is the twenty-first century

---

[1] The Parties' Agreement could also equally be considered a "clickwrap agreement" because these types of agreements, like the Sunnyside.shop registration process, require "a website user to expressly assent to the website's terms of use by clicking on an "I agree" box after being presented with terms, before continuing with an Internet transaction. *Ambrosius,* 2021 IL App (1st) 200893, ¶ 29.  Regardless, because Plaintiff took an affirmative step during the registration process that manifests his assent to the TOS, the TOS represent the Parties' Agreement.

equivalent of turning over the cruise ticket. In both cases, the consumer is prompted to examine terms of sale that are located somewhere else. Whether or not the consumer bothers to look is irrelevant.").

Moreover, the form of the registration page and process and the TOS notice used is similar to others found to be sufficient to form a contract. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) ("[T]he language ' [b]y creating an Uber account, you agree' is a clear prompt directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms."); *Fteja*, 841 F. Supp. 2d at 840 ("Here, [the plaintiff] was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences. That was enough.").

That Plaintiff may or may not have clicked the hyperlink and read the TOS is irrelevant. *See id.* ("While it may be the case that many users will not bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice."); *Blau v. AT&T Mobility*, No. C 11-00542-CRB, 2012 U.S. Dist. LEXIS 217, 2012 WL 10546, at *4 (N.D. Cal. Jan. 3, 2012) ("If a party could get out of a contract by arguing that he did not recall making it, contracts would be meaningless. It is not even relevant if Plaintiffs did not read the agreements before signing them."); *Oelze v. Score Sports Venture, LLC*, 401 Ill. App. 3d 110, 117, 927 N.E.2d 137, 339 Ill. Dec. 596 (2010) (finding that the failure to read an agreement before manifesting assent to it does not invalidate the agreement; "plaintiff had a duty to read the agreement before she signed it. She did not read it. She was not prevented from reading it. It was her own decision not to read it.").

Consider also *Domer v. Menard, Inc.*, 116 F.4th 686, 691 (7th Cir. 2024). There, the Appellate Panel affirmed the grant of defendant's motion to compel arbitration because, like here,

7

its website provided reasonably conspicuous notice of the terms to which the customer would be bound and the plaintiff unambiguously manifested her assent to those terms. *Id*. The same is true here. Attention is immediately drawn to the TOS during account registration as Plaintiff is required (and did) select the box indicting his assent to be bound by the TOS. (Trujillo Decl. ¶ 13.) The user interface is also simple, and the disclosure of the TOS is clear to the consumer. Further, the size and coloring of the disclosure's font is easily digestible to the average consumer. Indeed, it is both spatially coupled (i.e., the box appears directly above the "Next" button during account registration and is clear and uncluttered) and temporally coupled (i.e., the consumer must select it when he or she first registers for an account). (Trujillo Decl. ¶ 6.) Thus, a reasonably prudent smartphone user like Plaintiff would understand that the terms were connected to the creation of his Sunnyside.shop account. Accordingly, because a valid and enforceable arbitration agreement exists here, the Court must give full force to its terms. 9 U.S.C. § 4; *Champ v. Siegel Trading Co., Inc.*, 55 F.3d 269, 274 (7th Cir. 1995).

iii. <u>The Scope of the Arbitration Clause includes All Defendants</u>.

The preamble to the TOS makes clear which entities it covers:

> By accessing this Website (defined below), including, the websites of https://www.Sunnyside.shop and its affiliates operating in the United States, which collectively are referred to as "Sunnyside*," with all such websites collectively being referred to as "this Website", you agree to be bound by these Website Terms of Service. As used herein, "we", "us", and "our" refer to, individually and collectively as may be applicable, Sunnyside* and all its operating affiliates in the United States including, without limitation, Cresco Labs, LLC ("Cresco"), Cresco Labs Inc., and all affiliates of Cresco Labs, LLC and Cresco Labs Inc.

(Trujillo Decl. Exs. 1 and 2.) Defendants in this action are "affiliates" of Cresco Labs, LLC and Cresco Labs Inc. as set forth in the TOS preamble because they each share common control and

8

ultimate ownership. *In re Motorola Sec. Litig.*, 644 F.3d 511, 519 (7th Cir. 2011) (discussing definition of "affiliate" in the securities context as a "person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the person specified). Accordingly, all Defendants are covered by the broad language of the TOS.

iv. <u>The Parties Delegated Issues of Arbitrability to the Arbitrator</u>.

Before analyzing whether Plaintiff's claims fall within the scope of the arbitration clause, the Court must decide whether the Parties delegated that responsibility to the arbitrator. Here, the Parties agreed that "any dispute as to whether a claim is arbitral shall be submitted to the arbitrator for decision." (Trujillo Decl. Exs. 1 and 2). When "clear and unmistakable evidence" shows that the parties agreed that an arbitrator would decide issues of arbitrability, such provisions must be enforced. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy") (cleaned up); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue."). Thus, the arbitrator should decide whether Plaintiff's claims fall within the scope of the Parties' arbitration agreement.

Even if the arbitration clause was silent as to who decides what claims are arbitral, the Parties' arbitration clause is broad enough to cover Plaintiff's claims here as it covers "any dispute relating in any way to" to the TOS or "the relationship between the Parties." (Trujillo Decl. Exs. 1 and 2.) This provision is comprehensive and broad. Arbitration clauses containing similar language such as "arising out of" are extremely broad and "necessarily create a presumption of

arbitrability." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc*., 174 F.3d 907, 909-10 (7th Cir. 1999); *see also Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd*., 1 F.3d 639, 642 (7th Cir. 1993); *Faulkenberg*, 637 F.3d at 810-11, *supra* (finding arbitration clause using "any dispute" language to be broad enough to encompass the plaintiff's claims). Thus, Plaintiff's claims fall within the scope of the Parties' arbitration clause.

v.    <u>Plaintiff Agreed to Arbitrate His Claims on an Individual Basis</u>.

Because a valid and enforceable agreement exists, this case should also be dismissed because Plaintiff cannot pursue his claims as a class action. The Parties agreed:

> [] that any arbitration or proceeding shall be limited to the dispute between us and you individually, and (i) no arbitration or proceeding shall be joined with any other; (ii) there is no right or authority for any dispute to be arbitrated or resolved on a class action-basis or to utilize class action procedures; and (iii) there is no right or authority for any dispute to be brought in a purported representative capacity on behalf of the general public or any other persons. YOU AGREE THAT YOU MAY BRING CLAIMS AGAINST US ONLY IN YOUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

(Trujillo Decl. Exs. 1 and 2.) Courts in the Seventh Circuit enforce provisions in arbitration agreements, like the one here, that do not allow class arbitration. For example, in *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003), the Seventh Circuit reversed a denial to compel arbitration and class certification because, among other things, the at-issue arbitration agreement was enforceable and "explicitly preclude[d] the plaintiffs "from bringing class claims or pursuing "class action arbitration." *Id*. Thus, the Panel was "obliged to enforce the type of arbitration to which these parties agreed, which [did] not include arbitration on a class basis." *Id.* at 277; *cf. Employers Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573, 577 (7th Cir. 2006)

10

(holding that when an arbitration agreement is silent as to whether class arbitration is permissible, the question should be decided by the arbitrator).

Here, the Parties' Agreement "explicitly" prohibits class actions. (Trujillo Decl. Exs. 1 and 2.) Because Plaintiff agreed to pursue his claims on an individual basis and waived his right to a class action, the Court must enforce the Parties' Agreement as written and compel him to arbitrate his claims individually against Cresco. This is, by consequence, an independent basis for dismissal.

**B.      The FAA Mandates that Plaintiff Arbitrate His Claims against Cresco.**

Because a valid arbitration exists, the Court must enforce it as written. The FAA reflects both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 (2011)). Under the FAA, arbitration agreements "'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 740 (7th Cir. 2010) (quoting 9 U.S.C. § 2)). "Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them." *Id.*

The party seeking to compel arbitration has the burden of establishing an agreement to arbitrate. 9 U.S.C. § 4; *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). Once the party seeking to compel has done so, the party resisting arbitration bears the burden of identifying a triable issue of fact on the purported arbitration agreement. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The resisting party's evidentiary burden is like that of a party opposing summary judgment. *Id.* "[A] party cannot avoid compelled arbitration by generally

11

denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* Like summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws reasonable inferences in its favor. *Id.* If the party opposing arbitration identifies a genuine issue of fact as to whether an arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

The Supreme Court has guided lower courts to aid their determination of whether to enforce an agreement to arbitrate or to except such an agreement in favor of litigation. *See Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987) ("To defeat application of the Arbitration Act in this case, therefore, the McMahons must demonstrate that Congress intended to make an exception to the Arbitration Act … an intention discernible from the text, history, or purposes of the statute."). Generally, in commercial disputes like here, an arbitration agreement between parties must be enforced because the FAA requires it. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[I]nsofar as the language of the [Federal Arbitration] Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement."). However, there is no national policy favoring arbitration. *See Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 666 (7th Cir. 2009) ("The Federal Arbitration Act eliminates hostility to private dispute resolution; it does not create a preference for that process."). "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, ___ U.S. ___, 142 S. Ct. 1708, 1713 (2022).

Under the FAA, a court may compel arbitration if three elements are shown: (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *Kovachev v. Pizza Hut, Inc.*, No. 12 C 9461, 2013 U.S. Dist. LEXIS 115284, at *4 (N.D. Ill. Aug. 15, 2013) citing *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (Tharp, J.) (granting motion to compel arbitration); *see also Gilbert v. I.C. Sys.*, No. 19-CV-04988, 2021 U.S. Dist. LEXIS 16279, at *4-6 (N.D. Ill. Jan. 28, 2021) (Valderrama, J.) Cresco satisfies each of these elements.

**C.     The Court Should Dismiss this Action for Improper Venue.**

This case is also ripe for dismissal because the Parties agreed to arbitrate (not litigate) "any dispute" with the American Arbitration Association ("AAA"). (Trujillo Decl. ¶¶ 11-12.)  Stated differently, the Parties agreed that an arbitrator, not this Court, will adjudicate any dispute by and between the Parties.  And because Plaintiff improperly filed this lawsuit instead of demanding arbitration, the Court should dismiss this action for improper venue. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011) is dispositive. There, the Appellate Panel affirmed dismissal for improper venue because the parties' agreement included a forum selection clause (i.e., arbitration) and because the arbitration clause was broad enough to include the plaintiff's claims. *Id*.

Moreover, Cresco does not waive its contractual right to arbitrate by filing this Motion.  As the Seventh Circuit has held, a motion to dismiss based on a contractual arbitration clause is appropriately "conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3)." *Id*., *see also Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727,

733 (7th Cir. 2005). Here, like the parties in *Faulkenberg*, the Parties selected arbitration with the AAA as the forum for dispute resolution. (Trujillo Decl., Exs. 1 and 2) (selecting confidential arbitration in Cook County with the AAA.) Accordingly, dismissal for improper venue based on the Parties' arbitration clause is warranted. *Faulkenberg*, 637 F.3d at 810.

       **D.**        **No Grounds Exist to Invalidate the Parties' Agreement**.

Plaintiff cannot plausibly allege that he did not agree to individually arbitrate his claims against Cresco. As a threshold matter, when Plaintiff registered for his Sunnyside.shop account which allows him to place online pre-orders for in-store pickup, Plaintiff affirmatively checked the box stating that he "read and agreed" to be bound by the Sunnyside.shop TOS. (Trujillo Decl. ¶ 6.) There is no exception to this registration requirement. (Trujillo Decl. ¶ 21.) Any fraudulent inducement argument thus rings hallow as no one forced Plaintiff to enjoy the benefits of Cresco's online shopping experience or products available at Sunnyside.shop. Plaintiff alleges that "on or around August 10, 2023, among various other instances, [he] placed an online pre-order for a Remedi RSO Product for his personal and medicinal use. (Compl. ¶ 114.) During each of those instances, the TOS were in effect, available and accessible to him. (Trujillo Decl. ¶ 22.) Whether he read the TOS is irrelevant.

Second, Plaintiff cannot evade the Parties' agreement because he had notice of the TOS. *See, e.g.*, *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 990, 296 Ill. Dec. 258, 271, 835 N.E.2d 113, 126 (2005) (reversing denial of motion to compel arbitration because website's terms and conditions were enforceable because the website provided sufficient notice through multiple hyperlinks and conspicuous statements informing users that all sales were subject to the terms and conditions). Here, like in *Hubbert*, Plaintiff alleges that he placed numerous orders online at

Sunnyside.shop. (Compl. ¶114.) Not only did Plaintiff have notice of the TOS during registration and his online shopping experience, he also was provided notice through his email order confirmation (if selected) which includes a hyperlink to the TOS. (Trujillo Decl. ¶ 22.) Indeed, during the registration process, Plaintiff was drawn to the TOS hyperlink and had to affirmatively select that he read and agreed to same. (Trujillo Decl. ¶6.) If clicked, he would see bold, capitalized letters in simple, conspicuous writing. This is sufficient "to put [Plaintiff] on notice that there were terms and conditions that [he] should inquire about before completing the purchase." *Wigginton v. Dell, Inc.*, 382 Ill. App. 3d 1189, 1192 (2008).

Third, the arbitration clause and class waiver are not unconscionable. Procedurally, the clauses are easily understood by a reasonable consumer and are not hidden in a "maze of fine print." *Phx. Ins. Co. v. Rosen*, 242 Ill. 2d 48, 60 (2011). Rather, the language is written in capitalized letters in clear, plain language such that it is easily understood. Plaintiff does not have to click multiple links or navigate hard to read language. Substantively, the terms are not "one-sided" as Cresco must also participate in arbitration and is bound by the arbitrator's decision. As to the cost of arbitration, the AAA consumer rules are consumer-friendly. A true and accurate copy of AAA's consumer arbitration fee schedule is attached here to as **Exhibit B**. To allay any concern regarding costs, Cresco will cover Plaintiff's initial filing fee with the AAA should this case proceed to arbitration on an individual basis as agreed by the Parties.

IV.    CONCLUSION

For all of the foregoing reasons, Cresco respectfully asks that this Honorable Court dismiss this action or, alternatively, compel Plaintiff to arbitrate his claims against Cresco individually and stay these proceedings pending arbitration.

15

Dated: January 24, 2025.                    Respectfully submitted,


**CRESCO LABS, INC.; CRESCO LABS, LLC; CRESCO U.S. CORP.; CRESCO EDIBLES, LLC; TSC CRESCO, LLC; CRESCO LABS JOLIET, LLC; CRESCO LABS KANKAKEE, LLC; CRESCO LABS LOGAN, LLC; CRESCO LABS NOTES ISSUER, LLC**


By:   */s/ Joshua L. Harris*

Joshua L. Harris (ARDC No. 6331095)
600 W. Fulton Street, Suite 800
Chicago, Illinois 60661
josh.l.harris@crescolabs.com
T: 312.929.0993

*Counsel for Defendants*

16

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of January, 2025, I filed the foregoing electronically through the Northern District of Illinois CM/ECF system, which caused all counsel of record to be served by electronic means:

Laura Luisi
Jamie Holz
Luisi Holz Law
LuisiL@luisiholzlaw.com
HolzJ@luisiholzlaw.com
161 N. Clark St., Ste. 1600
Chicago, Illinois 60601
Firm ID: 101603
Tel: (312) 639-4478

James B. Zouras
Ryan F. Stephan
Anna M. Ceragioli
Justin M. Caparco
**STEPHAN ZOURAS, LLC**
222 W. Adams Street, Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
Firm ID: 43734
jzouras@stephanzouras.com
rstephan@stephanzouras.com

*/s/ Joshua L. Harris*
Joshua L. Harris (ARDC 6331095)

17